**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   MARK W. DAVIS,

                                      Chapter 13
                                      Case No.  14-26507 (CMG)

        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

MINION & SHERMAN
Scott D. Sherman, Esq.
Attorneys for Debtor

U.S ATTORNEY'S OFFICE
DISTRICT OF NEW JERSEY
Valorie D. Smith, Esq.
Attorneys for Internal Revenue Service

**CHRISTINE M. GRAVELLE, U.S.B.J.**

**INTRODUCTION**

      This matter comes before the Court by way of Debtor, Mark W. Davis's ("Debtor"), Motion to Reduce the Claims of the IRS.  At issue is whether certain tax obligations of Debtor were discharged in Debtor's previous Chapter 7 filing, or if said obligations were excepted from discharge under 11 U.S.C. 523(a)(1)(B)(i).  After reviewing the written submissions and conducting oral argument, and for the reasons stated below, this Court GRANTS the motion.

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## FACTS AND PROCEDURAL HISTORY

Debtor received a Chapter 7 discharge in October 2012. Two years later, he filed a Chapter 13 bankruptcy petition, proposing to pay allowed priority tax debt, in full, through his Chapter 13 plan.[1] On his Chapter 13 schedules, Debtor listed the IRS as holding an unsecured priority claim in the amount of $39,167.15 for the tax years 2005, 2006, and 2009, which he marked as disputed. The IRS timely filed a proof of claim, which was subsequently amended several times. The most recent amended proof of claim, claim numbered 4-5 (the "POC"), listed a claim in the total amount of $63,887.78. Of that amount $4,900.00 was listed as secured debt, $8,394.46 was listed as unsecured priority debt, and $50,593.32 was listed as unsecured debt. At issue in this motion is the portion of the unsecured debt for income tax obligations related to the 2005 and 2006 tax years,[2] totaling $42,657.72.

The IRS bases its claim on the tax liabilities set forth in two Substitutes for Return ("SFR"). The Internal Revenue Code ("IRC") allows the Secretary of the Treasury to prepare and file SFRs for taxpayers who have failed to file their own return. *See* 26 U.S. Code §6020. Subsection (a) of IRC section 6020 addresses returns prepared by the Secretary, and signed by

---

[1] The petition was filed in the name of Debtor and his wife, Tina J. Davis. Tina J. Davis was severed from the case by court order dated March 19, 2015.
[2] Debtor's original motion also objected to the claim as it related to the 2004 tax year. He has since conceded the validity of that portion of the debt.

the taxpayer, using information voluntarily disclosed by the taxpayer. Subsection (b) allows the Secretary to prepare a return using "his own knowledge and from such information as he can obtain through testimony or otherwise." 26 U.S. Code §6020.

In this case, the IRS processed and filed an SFR on behalf of Debtor, pursuant to subsection (b), for the 2005 and 2006 tax years on November 17, 2008 and April 20, 2009, respectively, thereby assessing a tax for each year. Debtor did not sign either SFR and did not respond to any notices or inquiries sent by the IRS pertaining to the liabilities. On January 28, 2010, Debtor submitted Form 1040s for the 2005 and 2006 tax years, which reduced the 2005 SFR estimated tax by $489.00, and reduced the 2006 SFR estimated tax by $3,646.00.

Seven months later, Debtor filed an offer in compromise with the IRS (the "OIC"). The parties disagree on the result of the filing. The IRS contends that Debtor paid the initial offer fee and made the initial offer payment, but then defaulted, resulting in the withdrawal of the offer on March 31, 2011. Debtor counters that he was not even aware that the IRS had accepted his OIC, despite following up with the IRS several times after submitting it.

A few years later, Debtor filed a voluntary Chapter 7 petition. On Schedule F of that petition, he listed the IRS as holding a claim of $103,628.89, of which only $2,156.40 was entitled to priority. That case progressed without incident, and this Court entered an order discharging Debtor in the normal course.

Debtor now brings the present motion in his Chapter 13 case claiming that the 2005 and 2006 tax obligations were discharged in his Chapter 7 bankruptcy filing based on his filing of the 1040s, albeit late. The IRS argues the 1040s filed by Debtor do not constitute returns.

**LEGAL ANALYSIS**

Title 11 of the United States Code (the "Bankruptcy Code") attempts to "relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). Accordingly, courts construe exceptions to discharge strictly against creditors and liberally in favor of debtors. *See* id. A creditor has the burden of proving all of the elements of an exception to discharge by a preponderance of the evidence. *See* Grogan v. Garner, 498 U.S. 279, 288-89, 112 L. Ed. 2d 755 (1991).

    (a) Pre-BABCPA Caselaw

The Bankruptcy Code excepts from discharge any debt for a tax, "with respect to which a return, or equivalent reports or notice, if required, was not filed or given." *See* 11 U.S.C. § 523(a)(1)(B)(i). Until the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Bankruptcy Code did not define the term "return." Pre-BAPCPA, courts developed a four-part test to define the term. *See* Beard v. Commissioner, 82 T.C. 766, 777-78 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986). In what is commonly referred to as the "Beard Test," a "return," must: 1) purport to be a return; 2) be executed by the debtor under penalty of perjury; 3) contain sufficient data to allow the calculation of the tax liability; and 4) represent an honest and reasonable attempt on the part of the taxpayer to satisfy the requirements of the law." Id.

Circuit courts split on the ultimate application of the Beard Test. An oft-cited Sixth Circuit decision focused on the effect of the form, finding that "Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code . . . A purported return filed too late to have any effect . . . cannot constitute 'an honest and reasonable attempt to

satisfy the requirements of the tax law.'" In re Hindenlang, 164 F.3d 1029, 1034 (6th Cir. 1999). That court also found that once the government has made a showing that a Form 1040 filed after a tax assessment serves no purpose, they have satisfied their burden. Id.

Other courts softened the In re Hindenlang *per se* rule precluding any post-assessment filing from ever qualifying as a return, finding such a rule would go "too far." *See* In re Moroney, 352 F.3d 902, 907 (4th Cir. 2003). Despite finding against the debtor, the In re Moroney court also stated that while delinquency was a factor, a debtor should be given the opportunity to demonstrate that the delayed filing was nonetheless an honest and reasonable attempt at self-assessment. *See* id.; s*ee also* In re Payne, 431 F.3d 1055, 1059-60 (7th Cir. 2005) (circumstances may exist that prevent taxpayers from filing a return).[3]

One pre-BAPCPA bankruptcy court in this district agreed with the general holding of In re Moroney. *See* In re Hetzler, 262 B.R. 47 (Bankr. D.N.J. 2001). In In re Hetzler, the court found that the IRS met its burden to establish that the debtor's late-filed 1040 forms did not represent an honest and reasonable attempt to comply with tax laws. Id. at 51-52. Consequently, the court held that the 1040 forms did not constitute a return. However, the In re Hetzler court cautioned that:

> Even though the government has met its threshold burden to establish that no 'return' was filed, a debtor may successfully assert that he a made an honest and reasonable attempt to comply with the tax laws . . . by providing sufficient facts to substantiate such an effort. For instance, the government's prima facie case could be defeated if the debtor shows that he was incapacitated for a period of time after a return was due . . . and then attempted to comply as soon as he was able to do so.
>
> Id. at 54.

---

[3] Though decided post-BABCPA, the In re Payne matter was filed prior to the effective date of BABCPA and therefore applied pre-BABCPA law.

In contrast, the Eighth Circuit decided that "the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it. The filer's subjective intent is irrelevant." In re Colsen, 446 F.3d 836, 840 (8th Cir. 2006).[4] The In re Colsen court noted that:

> [T]he fourth Beard criteria contains no mention of timeliness or the filer's intent. We have been offered no persuasive reason to create a more subjective definition of 'return' that is dependent on facts and circumstances of a taxpayer filing. We think that to do so would increase the difficulty of administration and introduce an inconsistency into the terminology of the tax laws.
>
> Id., 446 F.3d at 840.

The court in In re Colsen was persuaded by the dissenting opinion of Judge Easterbrook in In re Payne. In his dissent, Judge Easterbrook articulates the usefulness of post-assessment returns. He provides the example that under 26 C.F.R. § 301.7122-1(d) (implemented by Form 656) taxpayers must file a return before proposing a compromise of tax liabilities, even if that tax has already been assessed by the IRS on its own. *See* In re Payne, *supra,* 431 F.3d at 1060, *Easterbrook, J., dissenting*. He additionally points out that, "[t]ruthful returns, no matter how late, replace estimates with facts . . . A belated return will close off some avenues, narrow the dispute that remains should litigation ensue, and – well, it will facilitate compromise." Id. at 1060-61, *Easterbrook, J., dissenting*. He criticizes the majority decision, instead arguing that "[t]imely filing and satisfaction of one's financial obligations are requirements distinct from the definition of a 'return;' the majority, however, rolls them all together." Id. at 1061, *Easterbrook, J., dissenting*. In sum, he opined that "motive may affect the *consequences* of a return, but not the definition." Id. at 1062, *Easterbrook, J., dissenting*, (emphasis in original).

---

[4] Though decided post-BABCPA, the In re Colsen matter was filed prior to the effective date of BABCPA and therefore applied pre-BABCPA law.

(b) Post-BABCPA Caselaw

Congress subsequently sought to define the term "return" by the addition of a "hanging paragraph" at the end of 11 U.S.C. § 523(a), which states:

> For the purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).

Since the inclusion of the hanging paragraph, each of the three circuit courts that have ruled on the issue held that a late return does not satisfy the hanging paragraph's definition of a return. *See*, *e.g.*, In re Fahey, 779 F.3d 1, 10 (1st Cir. 2015) (Congress intended to settle dispute over late filed tax returns against debtor . . . it calls for satisfying legal filing requirements, not merely making 'honest attempt'); In re Mallo, 774 F.3d 1313, 1327 (10th Cir. 2014) (plain, unambiguous language of §523(a) excludes from definition of 'return' all late filed tax forms, except those prepared under §6020(a)); In re McCoy, 666 F.3d 924, 932 (5th Cir. 2012) (late-filed state income tax return under applicable state law is not 'return' for bankruptcy discharge purposes unless filed under 'safe harbor' provision similar to IRC §6020(a)). The Third Circuit has not yet ruled on the issue.

Lower court decisions disagree as to whether a late filed return is a return for dischargeability purposes. The results and reasoning differ greatly. Somewhat frustratingly, despite Congress's attempts to clarify the definition of "return," this case law loosely mirrors that which existed pre-BABCPA. The first group of cases, which appear to be the majority, have adopted the reasoning applied in In re McCoy to find that a late filed return, even if filed one day

late, does not satisfy applicable filing requirements and cannot be considered a return for §523(a)(*) purposes. *See* In re McCoy, *supra,* 666 F.3d at 929; s*ee*, *e.g.*, Perkins v. Mass. Dep't of Revenue, 507 B.R. 45, 54 (D. Mass. 2014) (had Congress intended to exclude timeliness from the 'applicable filing requirements' it would have done so); In re Wendt, 512 B.R. 716, 720 (Bankr. S.D. Fla. 2013) (return filed after applicable deadline does not satisfy the requirements of the IRC and therefore cannot be considered a return under § 523(a)); In re Cannon, 451 B.R. 204, 206 (Bankr. N.D. Ga. 2011) (following reasoning of cases concluding a late return can never qualify as a return unless under §6020(a)); In re Creekmore, 401 B.R. 748, 751-52 (Bankr. N.D. Miss. 2008) (Congressional definition of "return" means that late filed return may never qualify as return for §523(a) purposes unless filed pursuant to §6020(a)). These "one day late" cases can be likened to the *per se* rule adopted in In re Hindenlang, with the distinction that the cases do not use the Beard Test and instead focus on the filing of a tax return as opposed to the assessment of a tax as articulated in In re Hindenlang. Also, they go further than In re Hindenlang in that filing a return one day late, even before any IRS assessment, is interpreted to mean that the debtor has not satisfied "applicable filing requirements" and therefore may never discharge such a debt.

Other post-BAPCPA cases have chosen to continue to apply the Beard Test, while maintaining the relevancy of the timeliness factor. *See, e.g.,* In re Biggers, 528 B.R. 870, 873-74 (Bankr. M.D. Tenn. 2015) (late-filed tax forms with lower liability than amount assessed by IRS do not support discharge because they serve no purpose; late-filed tax forms with higher liability support discharge because they serve a purpose); In re Smith, 527 B.R. 14, 23-24 (N.D. Cal. 2014), *currently on appeal to 9th Cir.,* (Beard Test still relevant as long-standing non-bankruptcy

law on definition of return). These cases have essentially maintained the holdings of In re Hindenlang, In re Moroney, and In re Payne despite the introduction of the hanging paragraph.

A final line of cases exclude the timeliness factor when determining whether a late filed return is sufficient to constitute a return under 523(a)(*), thus essentially adopting the In re Colsen holding and Judge Eastbrook's dissent in In re Payne. *See, e.g.*, In re Briggs, 511 B.R. 707, 718-19 (Bankr. N.D. Ga. 2014) (focus should be on whether filing represents debtor's honest and reasonable attempt to disclose relevant financial data . . . timeliness should not be considered in evaluating the debtor's subjective intent at the time of filing."); In re Martin, 508 B.R. 717, 733 (Bankr. E.D. Cal. 2014) (filing return before assessment not a requirement of applicable nonbankruptcy law under the hanging paragraph); In re Rhodes, 498 B.R. 357, 369 (Bankr. N.D. Ga. 2013) (fourth prong of Beard Test includes no timeliness requirement). However, while the courts in In re Briggs and In re Rhodes relied on Judge Easterbrook's In re Payne dissent, it appears that Judge Easterbrook did not contemplate that his analysis would survive the BABCPA addition of the hanging paragraph, stating, "[a]fter the 2005 legislation, an untimely return cannot lead to a discharge – recall that the new language refers to 'applicable non-bankruptcy law (including applicable filing requirements)'." In re Payne, 431 F.3d at 1060, *Easterbrook, J., dissenting*.

A bankruptcy court in this district recently addressed this very issue, and found that a late-filed return can meet the definition of a "return" under 523(a)(*). See In re Maitland, 531 B.R. 516 (Bankr. D.N.J. 2015), *currently on appeal to the District of New Jersey*. In In re Maitland, the court thoroughly analyzed the circuit court decisions applying the one-day rule and respectfully departed from those decisions for five reasons: 1) those courts' reading of the definition of "return" would render other parts of the statute superfluous; 2) a plain language

approach does not fully support those courts' reading of the term "return"; 3) the draconian result of the one-day rule is inconsistent with the underlying purpose of the Bankruptcy Code to give a fresh start to honest but unfortunate debtors; 4) the one-day rule is anomalous with the broader statutory scheme of 523(a), which primarily address debts arising out of culpable conduct of the debtor, not blameless mistake; and 5) the courts fail to address the detrimental impact the rulings would have on unsecured creditors.  Id. at 520-22.

      (c)  Application of Analysis to Case at Bar

The parties herein did not address the applicability of the Beard Test post-BABCPA.  But the IRS applied the test in its briefing, noting that the first three prongs of the test have been satisfied, and that the only issue is whether the late-filed returns represent an honest and reasonable attempt to satisfy the requirements of the tax law.  In the absence of any arguments presented as to why this Court should not apply the Beard Test, we will examine the issue using that standard.

In the absence of fraud, misreporting or other substantive inaccuracies on the face of the 1040 form, this Court finds that no issue has been raised with regard to Debtor's honesty and reasonableness.  We agree with those decisions that hold that the timing of the filing is not a factor in determining whether the document meets the definition of a "return."  We are persuaded by the comprehensive analysis done by the court in In re Maitland, as well as the by reasoning set forth by Judge Easterbrook in his dissent in In re Payne, and find that a late filed return can still constitute a "return" for the purposes of discharge under 523(a).

Judge Easterbrook expands in In re Payne, "[i]t makes perfect sense to say 'Perkins completed his tax return but forgot to file it.'  And if Perkins posts it a year late, the thing being

filed is a "return." If it is a return in the IRS's files, it was a return while in Perkins's desk drawer." In re Payne, 431 F.3d at 1061, *Easterbrook, J., dissenting*. Though this analysis is limited by the addition of the hanging paragraph, which requires satisfaction of the requirements of applicable nonbankruptcy law to constitute a return (and not merely a document in a desk drawer), the IRS's reply essentially acknowledges that it is a return in their files by referring to it as such in their opposition.

We recognize that Judge Easterbrook's dissent appears to accept a timeliness requirement in the hanging paragraph, although the idea is not developed. If the presence of a timeliness requirement is what is implied in the dissent, we disagree. The IRS clearly accepts late-filed returns. Returns must be filed, late or not, in order to make an OIC. The IRS uses information contained in late-filed returns to replace estimated liabilities with actual liabilities. This Court reads the hanging paragraph to include as "returns" those reports prepared by the taxpayer, late or not, or which the taxpayer has acknowledged as accurate and complete. It reinforces and the disclosure requirements of the IRC.

In fact, this matter provides an exact demonstration of the scenario presented by Judge Easterbrook in his dissent in In re Payne. Here, Debtor filed his tax returns in advance of filing an OIC with the IRS. Had he not filed those returns he would not have been able to utilize this avenue.[5] He was filing his returns for a legitimate purpose: to enter into the OIC process. The holding of In re Hindenlang and its progeny would prohibit compromise of a tax debt once it has been assessed.[6] It removes any incentive for a delinquent taxpayer to accurately disclose

---

[5] While the parties raised an issue of fact regarding the ultimate outcome of Debtor's submission, the outcome is not relevant to this Court's findings. Even if Debtor made his OIC with no intent to pay, the IRC provides copious protections and remedies to the IRS.
[6] It should be noted that the requirement that a tax return be filed before making a proposal of compromise, 26 C.F.R. § 301.7122-1(d), became effective in 2002, after the In re Hindenlang decision.

financial information once the tax debt has been assessed. It also illustrates the difficulty with the unbending holding of In re Hindenlang.

This Court does not agree that the language of the hanging paragraph should be construed in favor of the IRS. The IRC provides many collection vehicles for the IRS. It also provides for late-filed returns, and penalties thereon. In allowing the majority definition of "return" we would be allowing the IRS to pick and choose the definition of "return" based on which definition works best for them.

Additionally, the Bankruptcy Code provides priority treatment and many other protections for tax claims. *See*, *e.g.*, 11 U.S.C. § 503(b)(1)(B); 11 U.S.C. § 507(a)(8). To provide the IRS with another advantage based on an incomplete definition of "return" in § 523(a)(*), unfairly deprive Debtors of the fresh start contemplated by the Bankruptcy Code.

## **CONCLUSION**

After review of the applicable case law we find the most logical and consistent reading of the hanging paragraph to be set forth in those cases which hold that there is no timeliness requirement when determining if a filing constitutes a "return" for the purposes of discharge. This Court GRANTS the Debtor's Motion to Reduce the Claim of the IRS.

The Court will enter an Order consistent with this decision.


Dated: September 29, 2015          **/S/Christine M. Gravelle**
                                    United States Bankruptcy Judge